IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARY FALCONE,                     :    CIVIL ACTION
                                  :    NO. 06-5112
         Plaintiff,               :
                                  :
   v.                             :
                                  :
TEAMSTERS HEALTH AND              :
   WELFARE FUND,                  :
                                  :
         Defendant.               :


_____M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          May 31, 2007

        Before the Court is Defendant Teamsters Health and
Welfare Fund's (the Fund) Motion to Dismiss or, in the
Alternative, for Summary Judgment (doc. no. 2).  In response to
Defendant's motion, Plaintiff Mary Falcone has filed a cross-
motion for summary judgment.

        There are two central issues in this case.  One,
whether a claim for reinstatement of health benefits under an
ERISA fund is statutory or contractual in nature.  If the Court
determines that Plaintiff's claim is statutory, then Plaintiff is
free to proceed with a suit in this Court, without first
exhausting her administrative remedies.  If, however, the claim
is merely to enforce the terms of the health plan, then
exhaustion is required, absent an exception to exhaustion, before
proceeding with the case in court.  And two, whether based on the
merits of the case, Plaintiff is entitled to relief.

As to the first issue, whether the claim is statutory or contractual in nature, because Ms. Falcone's claim seeks redress for violations of ERISA itself, rather than merely an interpretation of the plan provisions, Plaintiff's claim is statutory in nature.  Therefore, exhaustion is not required and the Court will rule on the merits of case.

Even if the Court were to construe the claim as an interpretation of the plan provisions, exhaustion would nevertheless be excused as futile in this case, allowing the Court to reach the merits.  The Fund's stated policy is to terminate a dependent's coverage when she is "separated" from her spouse, defined in the Plan as "living separate and apart."  This fixed policy provides clear evidence that any appeal Ms. Falcone may have attempted to pursue would have been futile.  Therefore, notwithstanding the fact that Plaintiff did not exhaust her administrative remedies, the Court is free to reach the merits of this case.

Turning to the second issue, the merits of the case, there is no authority to support the conclusion that a Fund is not free to terminate coverage absent the occurrence of a "qualifying event."  Rather, funds generally may modify, adopt or terminate plans at their discretion.  Defendant has pointed to an absence of genuine issue of material fact and is entitled to judgment as a matter of law.  Conversely, Plaintiff has failed to

-2-

raise a genuine issue of material fact that the Fund's decision to terminate Plaintiff's coverage when she ceased cohabitating with her husband, the Plan participant, violated ERISA. Therefore, Defendant's motion for summary judgment will be granted, and Plaintiff's motion for summary judgment will be denied.

I.   BACKGROUND

Plaintiff Mary Falcone brings this suit to challenge the termination of ERISA health benefits and denial of reinstatement of those benefits after she separated from her husband.  The material facts are undisputed.

Ms. Falcone's husband, Benjamin Falcone, a truck driver, is a member of the Teamsters Union.  As a member of the Teamsters Union, Benjamin is a participant in the Teamsters Health and Welfare Fund (the Fund).[1]  The Fund provided health care benefits for Benjamin, and for Ms. Falcone and their three children as dependents.

Plaintiff's coverage was governed by the provisions of the Summary Plan Description of the Plan of Benefits of the Teamsters Health and Welfare Fund (the Plan).  The Plan provided

---

[1] Teamsters Health and Welfare Fund is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1), and a "multi-employer plan" within the meaning of ERISA, 29 U.S.C. § 1002(37).

-3-

that "A dependent's eligibility shall automatically terminate . . . [w]hen a dependent ceases to be a 'dependent' as defined herein."  Plan at 4.  "Dependent" is further defined, in relevant part, to include the participant's spouse, "provided you are not separated (living separate and apart as defined by Pennsylvania law)."  Plan at 3.  Pennsylvania law, in turn, defines "separate and apart" as "cessation of cohabitation, whether living in the same residence or not."  23 Pa. Cons. Stat. Ann. § 3103.

On May 25, 2006, Ms. Falcone obtained a Protection from Abuse order against her husband from the Montgomery County Court of Common Pleas.  Ms. Falcone and her husband also began living apart (in separate residences) at that time.

On October 6, 2006, Ms. Falcone contacted the Fund to inform it that she was no longer living with her husband and was not receiving her mail related to the Fund.  During that conversation, the Fund informed Ms. Falcone that her separation from her husband was a "qualifying event" under the terms of the Plan that warranted termination from benefit coverage.

Later that same day, Ms. Falcone's counsel wrote to the Fund to dispute the claim that the separation was a "qualifying event" warranting termination of benefits and to request immediate reinstatement of her medical coverage.  The Fund sent Plaintiff a letter formally terminating her coverage, retroactively to May 26, 2006 (the date the separation occurred),

-4-

and offering her the option of enrolling in COBRA.  See
Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA),
29 U.S.C. §§ 1161-69.

In a letter dated October 27, 2006, the Fund denied Ms.
Falcone's request for reinstatement of coverage and informed her
of the opportunity to appeal the denial to the Appeals Committee
of the Fund's Board of Trustees by December 27, 2006.

Plaintiff chose not to appeal the Fund's decision to
deny reinstatement of coverage.  Instead, she filed the present
complaint on November 20, 2006.

Ms. Falcone's complaint asserts two counts: (1)
violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), and (2)
declaratory relief under 29 U.S.C. § 1132(a)(3).[2]  She is seeking
damages for medical bills and COBRA premiums paid, attorneys
fees, statutory penalties, and a declaration that she is entitled
to medical coverage under ERISA until she and Mr. Falcone are
divorced.


II.  CROSS MOTIONS FOR SUMMARY JUDGMENT

Before the Court is the Fund's Motion to Dismiss or, in
the Alternative, for Summary Judgment (doc. no. 2).  In response
to Defendant's motion, Plaintiff has filed a cross-motion for

---

[2]  The complaint actually cites "29 U.S.C. §a(3)," which is
an incorrect citation.  However, at the hearing held on February
15, 2007, Plaintiff's counsel stated that this was an error.

summary judgment.  The Court will analyze the briefings as cross-motions for summary judgment under Federal Rule of Civil Procedure 56.

A.    Legal Standard for Summary Judgment

When confronted with cross-motions for summary judgment "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  10A Charles A. Wright, Arthur R. Miller & Mary Kane, Federal Practice and Procedure § 2720 (1998).  Thus, with respect to each party, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

B.    Application

1.    The violation alleged by Plaintiff is statutory in nature.

Whether or not a plaintiff must exhaust her administrative remedies before filing an ERISA claim in court depends upon the nature of the underlying claim.  If the plaintiff contests the interpretation of the plan's provisions or

extent of her rights secured by contract, then exhaustion is required.  On the other hand, if the redress sought by the plaintiff is statutory in nature, the exhaustion hurdle is lifted and the plaintiff may proceed with her lawsuit.  Ms. Falcone's claim falls into the latter category, and Plaintiff will not be required to exhaust her administrative remedies in this case.

A beneficiary of ERISA health benefits, like Ms. Falcone, is entitled under § 502(a)(1)(B) of ERISA to bring suit in order to recover benefits due under the terms of an employee benefit plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).  It is well-settled, however, that before doing so, the beneficiary must first exhaust her administrative remedies.  See D'Amico v. CBS Corp., 297 F.3d 287, 190-91 (3d Cir. 2002); Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002).

The purpose of the exhaustion requirement and the strong preference for exhaustion was explained by the Third Circuit in Harrow:

> Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."  Moreover, trustees of an ERISA plan "are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds

by preventing premature judicial intervention in their decision-making processes." Id.; see also Zipf, 799 F.2d at 892 ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

279 F.3d at 249.

While exhaustion is required before pursuing a denial of benefits claim, it is not necessary when a party is suing based on a violation of her statutory rights under ERISA. Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 893 (3d Cir. 1986). The reasoning behind the Zipf exception to exhaustion is sound: "statutory interpretation is not only the obligation of the courts, it is a matter within their peculiar expertise." Id. The primary purpose of exhaustion – deference to administrative expertise – is absent if the violation alleged is statutory, rather than an interpretation of the beneficiary's contractual rights under the plan. Id.

Although Plaintiff's complaint incorrectly characterizes her claim as one filed under § 1132(a)(1)(B), in reality, Plaintiff is asserting a violation of rights secured by statute.[3]  This becomes apparent when the facts at hand are

_____

[3] At the hearing held on February 15, 2007, Plaintiff's counsel stated that the case should not have been brought under § 1132(a)(1)(B) and that it was an error on counsel's part.  The claim would have been more appropriately raised pursuant to § 1132(a)(3), which states: "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or

-8-

compared to those in <u>Kimble v. International Brotherhood of Teamsters</u>, 826 F. Supp. 945 (E.D. Pa. 1993) (Joyner, J.), the case most heavily relied upon by Defendant with respect to this issue.

In <u>Kimble</u>, a participant in the Teamsters Health and Welfare Fund and his wife sued the Fund after the Fund refused to cover the costs of the plaintiff's two medical procedures because she failed to use the plan's designated providers.  <u>Id.</u> at 946.  The court noted that exhaustion was required, absent an exception, when plaintiffs <u>filed claims for benefits and were denied</u>.  <u>Id.</u> at 947.[4]

The present case is distinguishable from <u>Kimble</u>. Unlike the plaintiff in <u>Kimble</u>, Ms. Falcone has not filed a claim for benefits and been denied coverage.  Rather, her benefits have

---

practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Section 1132(a)(3) only provides equitable relief and thus would not permit Plaintiff to recover damages for medical bills and COBRA premiums paid since these are not categories of relief "typically available in equity." <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 210 (2002).  Because the Court will grant Defendant's motion for summary judgment, the Court need not address what remedy would have been appropriate had the Plaintiff's claim succeeded.

[4] The court in <u>Kimble</u> went on to examine the Fund's denial letter sent to the couple.  It concluded that while clearly stating the reason for the Fund's denial, the letter did not amount to conclusive evidence that exhaustion would be futile. <u>Id.</u>

been terminated altogether.  Nor is Plaintiff arguing that the
Fund misapplied or misinterpreted the terms of the Plan.  In
fact, she concedes that the Plan provides for the termination of
benefits upon "separation," but that this provision of the Plan
violates the statutory rights ensured by ERISA.  The Court,
therefore, need not interpret the Plan provisions.  Indeed, the
provision terminating Ms. Falcone's coverage is straightforward.
Instead, the Court is called to interpret whether ERISA precludes
a Fund from terminating a beneficiary's health and welfare
coverage when the beneficiary begins living "separate and apart"
from her spouse, the Plan participant.  Because Plaintiff's claim
alleges a violation of rights secured by statute, there is no
requirement to exhaust administrative remedies before bringing
her claim in this Court.[5]

> 2.   Exhaustion would nevertheless be excused as
> futile.

Even if, _arguendo_, the Court would construe Plaintiff's
claim as merely an attempt to enforce and interpret the statutory
provisions, thereby generally requiring exhaustion of

---

[5] The _Zipf_ exception to exhaustion -- when a plaintiff is
alleging a statutory violation of ERISA -- has primarily been
applied in two kinds of cases: "(1) discrimination claims under §
510 of ERISA, or (2) failure to provide plaintiffs with summary
plan descriptions, as required by ERISA." _Harrow_, 279 F.3d at
253.  The rationale, however, is equally applicable in the
present case where the claim is also statutory in nature.

administrative remedies before pursuing a claim in Court, exhaustion would be excused in this case as futile.

A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so.  Harrow, 279 F.3d at 249-50; Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990) ("Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile.").  In order to warrant this exception to the exhaustion requirement, a plaintiff must make a "clear and positive showing of futility." Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995); see also Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001) (exhaustion not excused because correspondence with employer did not amount to an "unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review would be futile").  Without such a showing, courts have been reluctant to grant the exception to exhaustion. Harrow, 279 F.3d at 250.  One of the ways futility may be shown, and that which is present in this case, is the existence of a fixed policy denying the benefits.  Harrow, 279 F.3d at 250 (citing Berger, 911 F.2d at 916-17).

In this case, the Plan's administrator sent Plaintiff a letter denying her request for reinstatement, explaining, in no

uncertain terms, the Plan's position regarding Plaintiff's
ineligibility for benefits:

> [U]nder the terms of the Fund's Plan of Benefits,
> spouses who are living separate and apart from
> employees/members fall outside the definition of
> dependent spouse within the meaning of the Plan.

Compl. Exh. D (Ltr. from Plan Administrator William Einhorn, Oct.
27, 2006).

Any appeal in this case would have been a pointless
administrative exercise.  The provision is unambiguous and the
Fund's stance was clear and unwavering.  The Fund's letter
informing her that "spouses who are living separate and apart
from employees/members fall outside the definition of dependent
spouse within the meaning of the Plan," therefore, represents a
"fixed policy," rendering any effort to appeal futile.  Thus,
even viewing this claim as one to clarify rights to future
benefits under the terms of the plan under § 1132(a)(1)(B),
because exhaustion nevertheless would be futile in this case, the
Court is led to the merits of Plaintiff's case.


3.  <u>Merits</u>

The issue facing the Court with respect to the merits
of the case is whether the Fund's provision requiring the
termination of a beneficiary's health and welfare coverage when
that beneficiary is "separated" from his or her spouse violates
ERISA.  Because the Court concludes that the Fund is within its

right to terminate Plaintiff's coverage if she is "separated" from her husband, as the term is defined in the Plan, the Fund prevails on the merits of the case; no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

Plan sponsors, such as the Fund in this case, have wide discretion when fashioning benefits plans.  In fact, as long as the employer-provided health and welfare benefits plans do not violate a specific section of ERISA, they are free at any time to provide coverage, modify the terms of coverage, or even terminate health and welfare plans.  Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995) ("ERISA does not create any substantive entitlement to employer-provided health benefits. . . . Plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.").

Not only do employer-provided health and welfare benefits plans generally have wide discretion over how they fashion the plans, nothing in ERISA prevents an employer-provided health and welfare benefits plan from terminating a beneficiary spouse before the spouse is divorced.  Moreover, ERISA does not mandate that funds even provide coverages to spouses of fund participants in the first instance.  Marotta v. Road Carrier Local 707 Welfare Fund, 100 F. Supp. 2d 149 (E.D.N.Y 2000) (upholding multi-employer plan's decision to deny health

insurance to participant's spouse where plan documents made clear that the fund's trustees had discretion to interpret plan).

Furthermore, Congress's failure to mandate spousal health and welfare coverage in ERISA when it has provided for spouses in other contexts of ERISA represents a deliberate policy choice by Congress to leave this decision to the discretion of individual employer benefit plans.  By contrast, Congress has made clear its choice to provide for spouses in several other sections of ERISA.  For example, § 205 of ERISA, 29 U.S.C. § 1055, mandates that pension plans offer spouses the protections of both a qualified joint and survivor annuity and a qualified preretirement survivor annuity.  In addition, § 206(d) of ERISA, 29 U.S.C. § 1056(d), requires pension plans to recognize qualified domestic relations orders entered by state courts which assign a portion of a participant's pension to a spouse. However, no provision of ERISA mandates spousal health and welfare benefit coverage.  The reasonable conclusion, therefore, is that "Congress act[ed] intentionally and purposely when it include[d] particular language in one section of a statute but omits it in another."  DiGiacomo v. Teamsters Pension Trust Fund of Phila. & Vicinity, 420 F.3d 220, 227 (3d Cir. 2005).

In this case, the Fund did not violate the provisions of ERISA by terminating Plaintiff's health and welfare benefits when she and her husband, the plan participant, separated.

Nothing in ERISA required the Fund to provide coverage to Ms. Falcone in the first instance, much less maintain that coverage after she ceased cohabitating with her husband.  Plaintiff has pointed to no specific section of ERISA that the Fund violated by either providing for the termination of benefits once a beneficiary "separates" from the her spouse (the Fund participant), or by enforcing such a provision.  The Plan simply used its discretion when fashioning its benefits structure and chose to provide coverage to participants' spouses as long as they were not "separated," meaning "living separate and apart" -- a choice wholly within the Fund's discretion.  Thus, the Court concludes that the Fund has successfully pointed to the absence of a genuine issue of material fact and it is entitled to judgment as a matter of law.

Conversely, Plaintiff's arguments do not create a genuine issue of material fact and Plaintiff is not entitled to judgment as a matter of law.  Plaintiff's argument for reinstatement rests on certain provisions of the Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA), 29 U.S.C. § 1161, et seq.  COBRA is comprised of a series of amendments to ERISA made by Congress in 1986.  The general purpose of the COBRA amendments is to require an employer that sponsors an employee benefits plan to offer a plan beneficiary the option of continued coverage under the plan for an interval specified in 29 U.S.C. §

1162 when, because of a "qualifying event," a beneficiary would otherwise be ineligible for coverage.  Section § 1161 provides that "the plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a <u>qualifying event</u> is entitled, under the plan, to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161(a) (emphasis added).  A "qualifying event" is, in turn, defined in relevant part as follows: "[T]he term 'qualifying event' means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary: . . . (3) The divorce or legal separation of the covered employee from the employee's spouse."  29 U.S.C. § 1163.

Plaintiff does not seek COBRA continuing coverage in this case.  However, she argues, in essence, that its provision should inform the sections of ERISA and bar the Fund's termination of a beneficiary's coverage absent one of COBRA's enumerated "qualifying events."  Specifically, Plaintiff contends that mere separation, as opposed to legal separation, is not one of the six "qualifying events" listed under COBRA provisions that trigger the mandates of COBRA coverage.  Because it was not a qualifying event that mandated the offering of COBRA benefits, she reasons that the separation cannot justify the <u>termination</u> of

-16-

regular benefits and subsequent offering of COBRA benefits under ERISA.  According to Plaintiff, this then becomes the case of the "wrongfully offered" COBRA benefits -- i.e., the Plan offered her COBRA coverage in the absence of one of § 1163's qualifying events.

The Court disagrees.  One, it is important to note that this is not a case in which Plaintiff is seeking COBRA benefits. In fact, Plaintiff was offered, and enrolled in (albeit "under protest"), COBRA benefits.  Nor does she claim that the Fund did not provide her sufficient notice of her COBRA rights.

Two, Plaintiff misinterprets the protection afforded to beneficiaries in these provisions of COBRA.  Section 1161, in conjunction with § 1163, provides that when coverage is terminated as a result one of its six enumerated "qualifying events," the employer-provided health and welfare benefits plan must offer the beneficiary the choice of electing COBRA continuing coverage.  Thus, in no way does the employee welfare benefit plan's ability to terminate health and medical coverage hinge on the existence of one of the "qualifying events."  To hold that a benefit plan is unable to terminate a beneficiary's coverage except in those six cases would be in contravention to a fund's general discretion to freely "adopt, modify, or terminate welfare plans."  Curtiss-Wright Corp., 514 U.S. at 78.

Plaintiff's alternative argument is similarly

unpersuasive.  She claims that because § 1163 refers to "legal separation," and because that term is not defined in Pennsylvania law, the Fund is not able terminate her benefits until a divorce decree is entered.  Plaintiff cites Riggle v. Riggle, 3 Pa. D. & C. 4th 358 (Erie County Ct. of C.P., July 13, 1989), and Simpson v. T.D. Williamson Inc., 414 F.3d 1203 (10th Cir. 2005), in support of this argument.  Plaintiff's reliance on these cases is misplaced.

In Riggle, the defendant was the wife of an employee welfare plan participant who sought reimbursement of medical expenses.  3 Pa. D. & C. 4th at 360.  The governing plan, which provided coverage for spouses unless "legally separated," contended that it was not obligated to provide COBRA continuing coverage for the wife because she was separated from her husband, the plan participant, when the medical costs were incurred.  Id. The trial court agreed with the wife and concluded that the date of the "qualifying event" triggering COBRA's mandated continuing coverage was when the divorce decree was entered, since the concept of "legal separation" does not exist in Pennsylvania. Id. at 370.

The facts at hand are distinguishable from Riggle. Plaintiff here, unlike the plaintiff in Riggle, is not seeking COBRA benefits.  In fact, she states that she was wrongfully offered COBRA benefits, as no "qualifying event" took place that

-18-

would mandate the offering of COBRA continuing coverage.

Furthermore, Plaintiff misconstrues the Riggle court's holding.  There, the Pennsylvania Court of Common Pleas for Erie County held that the plaintiff was entitled to COBRA continuing coverage until a divorce decree was entered because Pennsylvania does not recognize "legal separation," one of the listed qualifying events in § 1163.  Riggle, 3 Pa. D. & C. 4th at 370. In other words, it did not hold that the welfare plan in that case was not able to terminate her coverage until the plaintiff was divorced; rather it held that once coverage was terminated, the plan was required to offer COBRA continuing coverage until the divorce decree was entered.  In this case, Ms. Falcone does not claim she was denied COBRA continuing coverage, only that she was wrongfully offered COBRA.  The Plaintiff cites no case, and the Court has not been able to locate any precedent, which rests an ERISA action on the wrongful offering of COBRA benefits.

Simpson is similarly inapposite.  There, the Tenth Circuit was faced with the issue of whether a divorce court's interlocutory protective order constituted a "legal separation" under § 1163(3).  If it did, the order would trigger the notice requirements of COBRA and the plaintiff's obligation to pay COBRA premiums in exchange for continuing coverage.  414 F.3d at 1204. The focal point was on COBRA; it simply did not address whether the plan was within its right to terminate the plaintiff's

regular coverage as a beneficiary.  Presumably, that issue was not contested by either party.

Plaintiff in the case at bar is not interested in COBRA benefits and does not claim that her rights have been violated under § 1161.  Furthermore, unlike the plan in <u>Simpson</u> which terminated benefits upon "legal separation"-- a term not defined in the plan -- the Fund in this case conditions the termination of benefits on "separation" which is clearly defined within the terms of the Plan.  Therefore, neither <u>Riggle</u> nor <u>Simpson</u> lends support to Plaintiff's claim in this case.

Finally, the Court finds comfort in the similar facts of <u>Goodall v. Gates Corp.</u>, 1994 WL 584555 (10th Cir. Oct. 25, 1994) (non-precedential).  In that case, the wife sought reinstatement of her health care benefits after she was terminated from coverage upon separation from her husband.  <u>Id.</u> The Tenth Circuit upheld the district court's judgment in favor of the ERISA employee welfare benefits plan, determining that the plan's provisions governing termination upon divorce or separation were unambiguous.  Because the parties stipulated that the wife and her husband were living apart, the plan was within its right to terminate her coverage.  The court rejected the wife's contention that the plan could not terminate her enrollment in the health plan just because she no longer resided

with her husband.[6]  Id. at *2.


III. CONCLUSION

     For the reasons set forth above, the Defendant's motion for summary judgment will be granted and Plaintiff's cross-motion for summary judgment will be denied.  Since the action was statutory in nature, Plaintiff was not required to exhaust her administrative remedies before proceeding to this Court.

     In any event, because the Fund had a fixed policy to terminate beneficiary's coverage in instances such as Plaintiff's, exhaustion would have been excused as futile. Defendant has pointed to an absence of genuine issue of material fact regarding whether its decision to terminate Plaintiff's health and welfare benefits violated ERISA.  Conversely, Plaintiff has failed to raise a genuine issue of material fact that the Fund's decision to terminate Plaintiff's coverage when she ceased cohabitating with her husband, the Plan participant, or that the Fund's offering of COBRA continuing coverage violated

---

     [6] The plaintiff in Goodall also argued that the plan terminated her in anticipation of a COBRA qualifying event, i.e. legal separation or divorce, in an attempt to avoid COBRA's requirement of continuing coverage. 1994 WL 584555, at *3.  The Tenth Circuit agreed with the district court and was "unpersuaded by [the plaintiff's] argument that a plan could not legally terminate coverage in anticipation of a qualifying event."  Id. In the end, the Tenth Circuit rejected the plaintiff's argument because the plan had offered her continuing coverage identical to COBRA.

ERISA in this case.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARY FALCONE,                    :    CIVIL ACTION
                                 :    NO. 06-5112
          Plaintiff,             :
                                 :
     v.                          :
                                 :
TEAMSTERS HEALTH AND             :
     WELFARE FUND,               :
                                 :
          Defendant.             :

### O R D E R

AND NOW, this **31st** day of **May, 2007,** after a hearing at which counsel for Plaintiff and counsel for Defendant participated, and for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (doc. no. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (doc. no. 3) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Reply Memorandum (doc. no. 11) is **GRANTED.**

**AND IT IS SO ORDERED.**

                              S/Eduardo C. Robreno
                         **EDUARDO C. ROBRENO, J.**

-23-